FILED
CLERK, U.S. DISTRICT COURT

4/4/25

CENTRAL DISTRICT OF CALIFORNIA
BY: ___MRV___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2025 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>             Plaintiff,<br><br>        v.<br><br>SHUKIMBA MALIK CARLIS, and<br>SOFIA VANESSA HERRERA,<br><br>             Defendants. | CR  2:25-cr-00249-MWC<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1343): Wire Fraud;<br>18 U.S.C. § 981(a)(1)(C) and 28<br>U.S.C. § 2461(c): Asset<br>Forfeiture] |

The Grand Jury charges:

[18 U.S.C. § 1343]

A.   INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

1.   The American Federation of State County and Municipal Employees ("AFSCME") was a national labor union that consisted of members who were employed by state and county governments.

2.   AFSCME Local Chapter 2620 ("Local 2620") represented approximately 5,000 health and social services professionals

employed by the State of California.  Local 2620 had headquarters in Burbank, California and Sacramento, California.

3. Defendant SHUKIMBA MALIK CARLIS ("CARLIS") was elected as the president of Local 2620 from October 2020 until September 2022.

4. In March 2021, SOFIA VANESSA HERRERA ("HERRERA") was elected as the treasurer of Local 2620.  HERRERA served as treasurer from March 2021 until September 2022.

5. As part of their roles as Local 2620 executive board members, CARLIS and HERRERA held Mastercard Inc. credit cards in their names.  CARLIS held a Mastercard credit card ending in 8607 ("AFSCME Credit Card 8607"); HERRERA held a Mastercard credit card ending in 8979 ("AFSCME Credit Card 8979") (collectively, the "AFSCME Credit Cards").

6. The AFSCME credit card expenses were paid using Local 2620 funds from a checking account held in the name of Local 2620 at United Business Bank, located in Walnut Creek, California.

7. CARLIS and HERRERA were subject to AFSCME's Financial Standards Code Article VII, Section 3, which states in pertinent part that "personal charges on the affiliate's credit card are strictly prohibited[.]"

8. CARLIS and HERRERA were also subject to Local 2620's written policy on use of Local 2620's credit cards, which said that AFSCME credit cards could not be used for "any personal item or purpose."

9. Per AFSCME Financial Standards Code Article V, AFSCME officers, including CARLIS and HERRERA, had "a fiduciary

2

responsibility to ensure that the union's assets [were] managed prudently and all expenditures [were] for the exclusive benefit of the affiliate and its members."

10. CARLIS and HERRERA were subject to Local 2620's financial reporting requirements. Under Local 2620's Constitution Article XII, Section 7, HERRERA, as Local 2620's treasurer, was required to provide a financial report at each Local 2620 executive board meeting, which took place every other month. This was to include, in part, all credit card statements.

11. Local 2620's policy stated that anyone using an AFSCME credit card had to provide an accounting of that charge on an expense report, to include a credit card slip and the itemized invoice. If a treasurer or president submitted the expense report, their charge had to be approved by another executive officer.

12. CARLIS and HERRERA had previously held positions as trustees of Local 2620, and were aware of Local 2620's rules and policies regarding credit cards and reporting requirements.

B. THE FRAUDULENT SCHEME

11. Beginning on an unknown date but no later than in or about March 2021, and continuing through at least in or about September 2022, in Los Angeles County, within the Central District of California, and elsewhere, defendants CARLIS and HERRERA, knowingly and with intent to defraud, devised, participated in, and executed a scheme and artifice to obtain money and property from AFSCME and Local 2620 by means of

3

materially false and fraudulent pretenses, representations, and the omission and concealment of material facts.

12. The fraudulent scheme operated, in substance, in the following manner:

    a. Defendants CARLIS and HERRERA used their AFSCME Credit Cards to make purchases for non-AFSCME-related expenses and for their personal benefits.

    b. Defendants CARLIS and HERRERA then arranged that the AFSCME credit card bills be paid using Local 2620's funds from Local 2620's checking account.

    c. As Local 2620 executive officers, CARLIS and HERRERA had a duty to inform Local 2620's executive board and trustees about their use of Local 2620's funds. Defendants CARLIS and HERRERA omitted material facts to Local 2620 regarding their misuse of Local 2620 funds. To that end, defendant HERRERA, with defendant CARLIS's help, did not inform Local 2620's executive board or Local 2620's trustees about their misuse of the AFSCME Credit Cards and Local 2620 funds and repeatedly failed to provide related financial records to Local 2620's executive board and Local 2620's trustees.

    d. Defendants HERRERA and CARLIS falsely stated that the record detailing their credit card purchases were not ready to be presented and that defendant HERRERA did not know how to present the records because of inadequate training. In reality, defendant HERRERA did not provide the credit card statements because they showed unauthorized purchases.

    e. Local 2620 trustee Y.C. repeatedly requested financial records from defendants HERRERA and CARLIS in order to

audit Local 2620.  On August 29, 2022, defendant CARLIS, in an effort to delay this audit and further conceal her and defendant HERRERA's misuse of the AFSCME Credit Cards, sent an email to Y.C. suspending Y.C. from Local 2620 and prohibiting her from engaging in AFSCME-related activities or business until further notice.

    f. Defendants CARLIS and HERRERA took several steps to conceal their misuse of the AFSCME Credit Cards.  Prior to defendant CARLIS taking office, Local 2620's credit card statements were mailed to Local 2620 offices. When defendant Carlis became Local 2620's president, she arranged for the AFSCME Credit Cards statements to be mailed to her residence instead of Local 2620's offices in order to more easily conceal her and defendant Herrera's unauthorized use of the AFSCME Credit Cards.

    g. On or about September 12, 2022, defendants CARLIS and HERRERA called the credit card company managing the AFSCME Credit Cards and placed a verbal password on the account so that only defendants CARLIS and HERRERA could access the accounts online.

  13. In executing the fraudulent scheme described above, defendants CARLIS and HERRERA caused Local 2620 losses of approximately $270,000.

C. <u>USE OF INTERSTATE WIRES</u>

  14. On or about the dates set forth below, within the Central District of California and elsewhere, defendant CARLIS and defendant HERRERA, for the purpose of executing and attempting to execute the above-described scheme to defraud,

5

transmitted and caused the transmission of the following items by means of wire communication in interstate commerce:

| COUNT | DATE | DEFENDANT | ACT |
|---|---|---|---|
| ONE | March 31, 2022 | CARLIS | Used AFSCME Credit Card 8607 to purchase $870.53 of shoes from Jimmy Choo in Beverly Hills, California. |
| TWO | March 31, 2022 | CARLIS | Used AFSCME Credit Card 8607 to purchase $2,452.80 in accessories from Louis Vuitton in Beverly Hills, California. |
| THREE | February 11, 2022 | HERRERA | Used AFSCME Credit Card 8979 to purchase $1,756.29 of clothing and accessories from Tory Burch in Glendale, California. |
| FOUR | February 11, 2022 | HERRERA | Used AFSCME Credit Card 8979 to purchase $515.97 of clothing and accessories from Tory Burch in Glendale, California. |
| FIVE | May 12, 2022 | HERRERA | Used AFSCME Credit Card 8979 to purchase $2,033.02 of clothing and accessories from Tory Burch in Glendale, California. |
| SIX | May 12, 2022 | HERRERA | Used AFSCME Credit Card 8979 to purchase $108.05 of clothing and accessories from Tory Burch in Glendale, California. |

FORFEITURE ALLEGATION

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of the defendant's conviction of the offenses set forth in any of Counts One through Six of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

(a) All right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), the defendant, if so convicted, shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of the defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially

1 diminished in value; or (e) has been commingled with other
2 property that cannot be divided without difficulty.

                                    A TRUE BILL


                                    /S/
                                    Foreperson


BILAL A. ESSAYLI
United States Attorney

LINDSEY GREER DOTSON
Assistant United States Attorney
Chief, Criminal Division

*Frances S. Lewis*

FRANCES S. LEWIS
Assistant United States Attorney
Chief, General Crimes Section

SHAWN ANDREWS
Assistant United States Attorney
Deputy Chief, General Crimes Section

SARAH E. SPIELBERGER
Assistant United States Attorney
Asset Forfeiture & Recovery Section