# **Exhibit 2**

**American Federation of State, County and Municipal Employees, AFL-CIO**
**Financial Services – Auditing Department**
**AFSCME Affiliate Audit & Review Program**
**California Local 2620-Draft Report**

February 27, 2023

A review was made of the financial records at AFSCME Local 2620 in October 2022. This review, part of AFSCME's Affiliate Audit and Review Program, is not intended to replace the annual audit by a Certified Public Accountant. The review covered the period from January 2020 to October 2022. The time period scope was expanded in some areas where considered necessary.

Recommendations from this review are based on a review of policies, minutes, financial statements, and a sample testing of the council's accounting records. Our suggestions are intended to assist in updating and improving internal controls and the general fiscal administration of the council.

The review of Local 2620 several accounting and related administrative practices that depart from AFSCME's Financial Standards Code or generally accepted business practices. Areas of concern discussed below include:

- Credit Cards
- Union Property Not Returned to the Local
- Vendor Payments and Reimbursed Expenses
- Gift Cards Purchased and Distributed
- CPA Audits
- Operating Deficit for 2022
- Financial Reporting to Executive Board and Membership
- Operating Deficits for 2022
- Financial Submissions to the International

**<u>Credit Cards</u>**

CA Local 2620 had two Mastercard credit cards, from United Business Bank, which were in the name of the former President, Shukimba Carlis and the former Treasurer, Sofia Herrara. Other previous cardholders were Mildred Ingraham and Sally Heredia. The former President, Shakimba Carlis was removed from office when charges were filed against her in September 2022 and former Treasurer Sofia Herrara resigned her position in early October 2022.

The total union credit charges for the period of October 2020 to September 2022 were $545,311.50. There was almost no supporting documentation to support any of these credit card charges. Of this total amount, $107,209.94 was made by Shukimba Carlis, and $389,461.53 was made by Sofia Herrara. Ms. Herrara was the Local Treasurer only during the period of May 2021



Confidential - Subject to Protective Order USAO_00002898

to September 2022, and she made all these unauthorized and undocumented charges during that short time.

Our review of the charges on the statements indicate numerous personal charges with multiple high dollar charges for Amazon, Best Buy, Disney World, NYC Ballet, Broadway tickets, Tory Burch clothing, Anthroplogie clothing, Nordstrom, J. Crew, Ralph Lauren, Louis Vuitton, Gucci, Christian Dior, Tiffany and Co, Marriott Marquis on Broadway in NYC, Apple Store, Afterpay and Quadpay, which are internet layaway services, Etsy, Ann Taylor, Target, Kohls, Sunglass Hut and many others. A bonding claim will be filed against the former President and Treasurer for the amounts of the personal charges.

The Local's trustees, as part of the trustee audit initially identified many of the numerous charges made by Carlis and Herrerea that appear to be personal. They noted charges totaling approximately $183,000 that do not appear to be union related. Our review of credit card charges noted the following:

- Expense Reports were not prepared to support credit card charges, and there were very few receipts to support any of these charges. The former officers who made most of these charges have not turned over any documentation to support any charges.
- Charges for meals and entertainment were not supported by receipts, a listing of attendees or an explanation of union business purpose.
- Hotel and airfare charges were not supported by receipts nor any explanation of union business purpose.
- The Local's President and Treasurer flew from Los Angeles to New York City to have an in-person meeting with Amalgamated Bank. The purpose of this meeting was to close out bank accounts, though this did not require an in-person meeting. The officers stayed at the Marriott Marquis in Times Square for a week, and per the credit card statements made credit card charges for Broadway shows and the New York City Ballet which are personal.
- A charge for Southwest Airlines in the amount of $287.95 for travel from Sacramento to San Diego round trip on the dates of August 8 to 15, 2022 was for Andrew Carlis, the son of Shukimba Carlis, the former President of the Local. Andrew Carlis is not a member of the Local and this charge was for personal travel.
- Charges were made for Disneyland resort tickets in the amount of $590.00 and merchandise in the Disney Park totaling at least $1,918.00.

*Credit Cards -Recommendations*

Article VI, Section 11 of the AFSCME Financial Standards Code states "AFSCME strongly recommends against the use of union credit cards, as they circumvent the requirements that two officers sign all disbursement checks."

The Local should consider reducing or eliminating the use of the union credit card. A reimbursed expense policy could be implemented in lieu of the credit card. Adequate procedures for prompt reimbursement of authorized expenditures eliminate the need for the use of a credit card that creates exposure of the union to potentially excessive liabilities. Where such procedures exist, individuals can use their personal credit cards and be reimbursed in a timely manner, thus eliminating the need for a union credit card.



Confidential - Subject to Protective Order USAO_00002899

If Local 2620 continues the use of a union credit card, it should comply with the requirements of the AFSCME Financial Standards Code such as the following:

- The Local should have a written policy that defines the type of the types of expenditures that are authorized for use of the card. The policy must also state that personal charges are strictly prohibited. Should any personal charges be made on the union credit card, the cardholder must immediately repay the local for the cost of the personal items charged. The credit card policy should be approved by the Local's executive board and/or general membership and noted in the meeting minutes.
- Any person responsible for making a charge on the union owned credit card must provide a timely accounting of that charge to the union on an expense report or other form intended for that purpose. Every union credit card charge should be reported on an expense report.
- All supporting receipts including the credit card slip and the detailed receipt should be attached to the expense report. A detailed explanation of the union business purpose is required for all charges.
- Charges for food for union meetings should include a listing of attendees, their union positions, and a detailed explanation of union business purpose for the meeting. Local officers should charge meals only if there is a valid union business purpose for the meal expenditure. Generally, lunch and meals during the workday is considered a personal expense.
- Charges for travel should be fully supported with itemized itineraries for airfare and hotel folios for lodging. A detailed sufficient explanation of the union business purpose must also be provided. The amounts of the supporting receipts should agree to the amounts of the charges on the expense reports and the credit card statement. Airfare and lodging should be reported on expense reports for the period in which the travel occurred. Travel for family members of the cardholders and other local officers is a personal expense and should not be charged on the union credit card.
- Upon receipt of the credit card statement, the charges on the statement must be reconciled to expense reports and detailed receipts in a timely manner. Any unsupported charges must be investigated. Charges that cannot be documented as to union business should be considered personal and should be immediately repaid to the Local by the cardholder incurring the charge.

**Union Property Not Returned to the Local**

The former President and Treasurer have not returned any books, records, documents, laptops, and other union equipment that are in their possession despite several requests to have these items returned to the Local.

*Office Equipment Not Returned by the Former Officers of the Local -Recommendations*

Appendix A of the AFSCME Constitution, which is the oath all AFSCME union officers must recite when they are sworn into office states all books, papers and other property of the union must be delivered to the officer successors upon leaving office. Not



Confidential - Subject to Protective Order USAO_00002900

returning these documents and equipment back to the Local is grounds for filing further charges against the former President and Treasurer.

**Vendor Payments and Reimbursed Expenses**

Our review of vendor payments and reimbursed expenses found that invoices and expense reports with supporting receipts were not maintained at the local's offices to support vendor payments and reimbursed expenses. The accounting firm that writes the checks does make a copy of any invoice or expense report that they have, and these are scanned and attached to the payment in QuickBooks.

*Vendor Payments -Recommendations*

The Local should maintain adequate documentation for all its payments to officers and vendors as required by the AFSCME Financial Standards Code. All payments to vendors must supported by an original invoice with a detailed explanation of union business purpose included as part of the documentation. All officer reimbursements must be supported by an expense report with original receipts, and a detailed explanation of union business purpose. The expense report should be approved by an officer or director who is not the preparer.

**Gift Cards Purchased and Distributed**

The Local purchased gift cards online from Perfectgift.com totaling $101,826.55 in February 2022 to distribute to the membership. The gift cards were purchased in $25.00 denominations. Per the outgoing Recording Secretary Jenelle Fischer, the motion to purchase these cards was not approved by the executive board by one vote. The board member who was the deciding vote later told the Former President Shukimba Carlis, that if it had been an in person rather than email vote, she would have voted for this. Per Jenelle, former President Carlis then unilaterally purchased the gift cards using an electronic funds transfer (EFT).

Former President Carlis then sent, by mail, an undisclosed amount of gift cards to the Local's members. The transmittal letter sent with the gift cards to members stated that the gift card was sent by the Local President, rather than by the Local. The former President was running for reelection at the time these gift cards were sent to members, and this appears to be using union funds to campaign for reelection. This was the subject of charges before the AFSCME Judicial Panel.

There was no accounting for the gift cards purchased or distributed there was a full box of gift cards with bad addresses that were returned to the Local. These gift cards are not being properly secured, as they are several months later still in a box on the floor of one of the offices at the Local.

*Gift Cards Purchased and Distributed- Recommendations*

AFSCME does not recommend the distribution of gift cards to members, as this is a depletion of the Local's treasury. Any purchase of gift cards, as with all union expenditures must be authorized prior to incurring the expenditure, and this authorization



Confidential - Subject to Protective Order USAO_00002901

must be adequately documented in executive board and/or general membership meeting minutes.

Gift cards should be treated like cash and the Local should adequately track their purchase and distribution. A list of card numbers should be created immediately upon each purchase of the cards. Signature sheets with matching card numbers that are evidence of the distribution of the cards should be agreed to the initial lists to show who received each card. The initial lists and signature sheets should be kept together so they can be easily matched. A reconciliation should be performed by the local to verify that the physical number of cards in in inventory agrees to the number purchased less the number distributed. All cards should be fully accounted for and properly secured to avoid access or distribution to unauthorized persons.

**CPA Audits**

Local 2620 has over 2,000 members and is required to have annual CPA audits, the last audit issued for this Local was for the year ending December 31, 2018. This is a serious violation of the AFSCME Financial Standards Code, as audits are required a minimum of once a year.

*CPA Audits- Recommendations*

Per Article XI, Section 1 of the AFSCME Financial Standards Code, all locals having more than 2,000 members must have an annual audit prepared by a Certified Public Accountant (CPA), performed in accordance with Generally Accepted Auditing Standards.

CPA Audits should generally be completed and approved by the Local's executive board within four or five months of the year end. Audit reports help ensure that the Local is basing its financial decision making on accurate and timely information. The Local should take steps to enforce timely annual delivery of audits by external CPA's and should review the audit as soon as practical after delivery.

**Financial Reporting to Executive Board & Membership**

The Local was not presenting complete or adequate financial reports at its regular executive board or general membership meetings. In some meetings, the balances in the accounts were reported, but there no indication that financial reports were presented at board and membership meetings.

*Financial Reporting and Large Affiliate Submissions- Recommendations*

The Council's Local is required to prepare detailed monthly financial reports to present and approve at executive board and general membership meetings. The Local's monthly financial reports should include an Income Statement and a Balance Sheet. According to the AFSCME Financial Standards Code, Article IX, Section 4, Locals with over 2,000 members are also required to prepare a monthly report showing actual income and expenses versus budgeted income and expenses for the month and year to date. internal financial reports that are presented to the executive board should include a balance sheet.

As required by the AFSCME Financial Standards Code, all Councils must submit quarterly reports, annual budgets, and surety bond reports to the International on a timely basis.

**Operating Deficits for 2022**

The Local's internal (unaudited) QuickBooks Profit and Loss Report for the period January to September 2022 indicates the Local had an operating deficit for the year to date of ($291,775.80) The Total Income (net of per capita taxes and fees) for January to September 2022 was $383,743.20. Total Expenses for this period were $360,914.46, of which $176,717.23 are classified as Unidentified Expenses. The Local's accountants record payments to the credit card company in Unidentified Expenses because no receipts or explanations of charges have been provided by the cardholders to the Local.

*Operating Deficit for 2022-Recommendations*

Although the local has sufficient net assets to absorb operating deficits, expenses and revenue should be examined and a plan developed to eliminate future deficits. Continued ongoing deficit operations could jeopardize the union's ability to provide necessary services to its members.

**Financial Submissions to International**

As of the October 2022 date of our on-site visit, the Local was seriously in arrears in its required financial submissions to AFSCME International. The last internal quarterly financial report submitted was for December 2020. As noted above, the last CPA audit report received was for the year ending December 31, 2018. The Local submitted a 2022 annual operating budget, but there was no income and only expenses reported on this budget document.

*Financial Submissions to the International-Recommendations*

As required by Article VI, Section 12 of the International Constitution and Article IX, section 8 of the AFSCME Financial Standards Code, the Local should send copies of its quarterly internal financial reports, CPA audits, annual budgets detailing estimated income and expenses to the International on a timely basis and shortly after approval or adoption by the Local's executive board.



Confidential - Subject to Protective Order USAO_00002903