ROBERT M. HELFEND, SBN. 113380
Helfend Law Group
23838 Pacific Coast Hwy,
No. 309
Malibu, CA 90265
310-456-3317
rmhelfend@gmail.com
Attorney for Defendant
SOFIA VANESSA HERRERA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>SOFIA VANESSA HERRERA,<br><br>Defendant. | Case No. 2:25-cr-00249-MWC-2<br><br>SOFIA HERRERA'S RESPONSE TO GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION<br><br>Sentencing Date: November 13, 2026<br>Sentencing Time: 10:00 a.m.<br>Courtroom: Hon. Michelle Williams Court |

Defendant SOFIA VANESSA HERRERA, by and through her counsel of record, Robert M. Helfend, hereby submits this Response to the Government's Supplemental Sentencing Position (Dkt. 58).

## I. INTRODUCTION

The Government's Supplemental Sentencing Position (Dkt. 58) fails to establish by a preponderance of reliable evidence that the actual loss attributable to Ms. Herrera under U.S.S.G. § 2B1.1(b)(1) exceeds $250,000. Faced with the defense's forensic accounting, which demonstrated that the Government's $272,481.91 figure is an unvetted gross total of every charge on the credit cards, the Government now attempts to substitute internal union governance disputes and default union disciplinary proceedings for actual proof of pecuniary harm.

Specifically, the Government contends that every single charge that was not pre-authorized by an affirmative vote of the Executive Board under AFSCME internal

codes constitutes criminal loss under the Sentencing Guidelines. This argument fundamentally confuses union administrative bylaws with federal sentencing law:

Failure to obtain internal committee pre-approval does not transform a legitimate business expense into an actual pecuniary fraud loss. Under U.S.S.G. § 2B1.1, cmt. n.3(A), “actual loss” is defined strictly as the “reasonably foreseeable pecuniary harm that resulted from the offense.” It requires proof that funds were diverted to personal use or that the union received no economic value. An internal procedural violation does not constitute fraud loss if the expenditure was in fact incurred for union business, such as official travel, staff conferences, and office equipment.

The Government's isolated examples mischaracterize the defense's forensic accounting and single out expenses attributable solely to the co-defendant. The Government highlights select charges, such as an airline ticket purchased by and for co-defendant Carlis's son, or high-end retail purchases, to imply the defense claimed them as legitimate. But Ms. Herrera's accounting specifically isolates non-union personal expenditures and distinguishes them from verifiable operational costs.

Internal union default proceedings lack procedural reliability. The AFSCME Judicial Panel decision (Dkt. 58-3), rendered in Ms. Herrera's absence without cross-examination or adversarial testing, adopted an initial unvetted claim of $496,671.47. The Government's own investigative agency (DOL-OIG) rejected nearly half of that internal union claim as unsubstantiated, underscoring its inherent unreliability as a measure of criminal loss.

The Government has failed to carry its burden. The Government bears the burden of establishing contested sentencing enhancements by a preponderance of reliable evidence. Because excluding even the objectively verifiable operational expenditures ($66,827.85) drops the actual loss to approximately $205,654.06, well below the $250,000 threshold, the twelve-level enhancement cannot stand.

Independent of all of these factual disputes, the Guidelines Manual in effect on the date of sentencing, discussed in Section II.D below, now makes the Government's requested twelve-level enhancement unavailable as a matter of law under any

calculation of loss in this record, including the Government's own unadjusted figure. The remainder of this Response addresses the factual disputes first, then explains why the November 1, 2026 guideline amendment independently resolves the twelve-level question.

## II. ARGUMENT

### A. The Government Confuses Internal Union Administrative Rules With Federal Criminal Loss Under U.S.S.G. § 2B1.1

The cornerstone of the Government's Supplemental Position is that an expenditure constitutes actual criminal loss under U.S.S.G. § 2B1.1 whenever it lacks formal pre-approval under AFSCME's Financial Standards Code (Dkt. 58 at 8 to 9). This argument is legally flawed.

Under the Sentencing Guidelines, “actual loss” is strictly defined as “the reasonably foreseeable pecuniary harm that resulted from the offense.” U.S.S.G. § 2B1.1, cmt. n.3(A)(i). Pecuniary harm is harm that is “monetary or that otherwise is readily measurable in money”; it does not include non-economic harms or purely administrative non-compliance. Id., cmt. n.3(A)(iii). Furthermore, loss must be reduced by the fair market value of property or services provided to the victim. Id., cmt. n.3(E)(i).

The Government's theory equates administrative non-compliance with economic fraud:

| Issue | Internal Union Policy (AFSCME Code) | Federal Criminal Loss (U.S.S.G. § 2B1.1) |
|---|---|---|
| Standard | Did the officer follow internal voting and pre-approval procedures? | Did the transaction cause actual, measurable pecuniary harm through personal diversion? |
| Remedy | Internal discipline, censure, removal from office, expulsion. | Loss-table enhancement based strictly on actual net economic harm. |

| | | |
|---|---|---|
| Operational Impact | Even valid union supplies or lodging violate policy if unvoted. | Legitimate business supplies and necessary operational travel provide value and are not fraud loss. |

Under the Government's rigid logic, if an elected union treasurer charges $500 for office printer paper, administrative envelopes, and postage without convening an Executive Board vote, the transaction violates union internal rules. However, it does not constitute a $500 federal criminal wire fraud loss. The union received the paper, envelopes, and postage; it suffered zero pecuniary harm.

The defense's forensic accounting identified $66,827.85 in expenses that were plainly operational, including office supplies from Staples and Office Depot, catering for union assemblies, signage, computer equipment issued for use in the union office, and travel and lodging incurred for official union business in New York and Philadelphia. The specific items the Government now challenges within this category, including the New York travel, the Fantasy Casino charges, and the Apple Store purchases, are addressed individually in Section II.B below by reference to the union's own contemporaneous business records. As shown there, those records reveal significant discrepancies in how the Government and Local 2620 have characterized these same expenditures at different times, discrepancies the Government's supplemental position does not resolve. Under Federal Rule of Criminal Procedure 32(i)(3)(B), it is the Government's burden to establish disputed sentencing facts by a preponderance of reliable evidence, and an internally inconsistent record cannot carry that burden simply because a failure of internal union governance is asserted.

**B. The Government's Reliance on Co-Defendant Carlis's Independent Conduct and Cherry-Picked Line Items Is Misleading**

To prejudice the Court's view of Ms. Herrera's submission, the Government selects a handful of inflammatory expenditures and attributes them broadly to “the defendant” (Dkt. 58 at 3 to 4, 11). A review of the record, including union business records not

previously before the Court, demonstrates that these charges do not undermine the defense's forensic accounting:

**The Southwest Airlines Charge for Andrew Carlis ($287.95):**

The Government emphasizes that a Southwest Airlines ticket was purchased for Andrew Carlis, the adult son of co-defendant Shukimba Carlis (Dkt. 58 at 11). The Government asserts that this charge was included in the defense's “plainly union related” schedule. However, that purchase was made by co-defendant Carlis on her own travel itinerary. Ms. Herrera derived no personal benefit from it. More importantly, this single $287.95 transaction is immaterial to the guideline threshold. Even if this entire line item is credited to the personal expense column, it does not alter the fact that over $66,000 in legitimate operational charges remain.

**The Away and Calpak Luggage Charges Are Correctly Classified as Union Travel Expenses:**

The Government cites approximately $6,349.76 in purchases from Away and Calpak as unauthorized personal spending (Dkt. 58 at 7). The defense's own sentencing memorandum already accounts for these charges. Schedule JSH A1, the defense's schedule of plainly union related expenses, itself identifies these purchases as luggage acquired for officer travel to AFSCME conventions, a category the defense's sentencing memorandum specifically disclosed as a union operating cost. See Defense Ex. B (Dkt. 57), Schedule JSH A1; Dkt. 57 at 7. Luggage issued to officers for repeated union travel, including the New York and Philadelphia trips addressed below, is the kind of ordinary operational expense that provides real value to the union and causes no pecuniary harm, regardless of the retailer from which it was purchased. The Government does not explain why union issued luggage becomes a personal expense simply because it carries a particular brand name, and it does not identify any evidence that the luggage was used for anything other than union travel.

**The New York Travel Reflects Documented, Officer Ratified Union Banking Business:**

The Government relies on Local 2620's own audit (Ex. 2) to argue that the New York travel was personal, citing the audit's characterization that the trip's purpose was an in-person meeting with Amalgamated Bank to close out union bank accounts, and that this “did not require an in-person meeting.” That characterization is contradicted by Amalgamated Bank's own account records. The defense has obtained a signature resolution and a designation of authorized signers, adopted at a duly called meeting of Local 2620's officers on January third, 2022, updating the authorized signers on Local 2620's general fund checking account and its political action committee checking account. See Defense Ex. E, Amalgamated Bank Account Records (filed concurrently). Both documents required the in-person execution of five separate officers, including Ms. Herrera as treasurer, with government issued identification verified for each signer. A bank does not require five officers to travel across the country and present photo identification in person merely to update its own internal records remotely; the in-person requirement, and the accompanying travel and lodging, reflect Amalgamated Bank's own account maintenance procedures, not a pretext invented by Ms. Herrera.

The defense does not contend that every expense associated with this trip served a union purpose. Contemporaneous messages among Local 2620's executive officers reflect that, once in New York for the banking business described above, several officers coordinated dinners and attended Broadway performances and a New York City Ballet performance, describing portions of the trip as an opportunity for executive officer bonding. Having reviewed the union's own contemporaneous records in preparing this Response, the defense withdraws from Schedule JSH A1 the specific Broadway and New York City Ballet charges identified in the records, totaling $2,734.00, net of a subsequent ballet ticket credit, and does not ask the Court to classify those charges as plainly union related. That concession reduces the defense's plainly union related schedule from the $69,561.85 total reflected in the defense's original sentencing memorandum to $66,827.85 and correspondingly increases the defense's primary loss figure from $202,920.06 to $205,654.06, a figure

addressed throughout the remainder of this Response. The defense's remaining position is narrower and is supported by the union's own banking records: the airfare and hotel charges necessary to bring five authorized officers to Amalgamated Bank and back reflect a legitimate, documented union purpose, separate from the personal entertainment charges the defense now concedes.

**The Fantasy Casino Charges Were a Budgeted, Committee Approved Convention Expense:**

The Government cites $5,385.00 in charges from “Fantasy Casino” as an example of an unauthorized personal expense (Dkt. 58 at 7). The record shows otherwise. Those charges consist of two payments, $1,075.00 on July thirteenth, 2022, and $4,310.00 on August thirteenth, 2022, both already identified in the defense's own forensic schedule as a “Casino Night Event” and classified as plainly union related. See Defense Ex. B (Dkt. 57), Schedule JSH A1. Local 2620's convention committee, on which Ms. Herrera served, established and approved a budget of $320,235 for a union convention held at the San Diego Sheraton, with a casino night event specifically itemized as a budgeted line item alongside catering, decorations, entertainment, and other convention expenses. See Defense Ex. F, Convention Committee Budget (filed concurrently). The Fantasy Casino charge reflects payment for that budgeted, committee approved event, already accounted for in the defense's own schedules, not an undisclosed personal expenditure.

**The Apple Store Purchases Reflect Union Office Equipment Already Disclosed in the Defense's Own Sentencing Memorandum:**

The Government identifies approximately $9,400 in Apple Store and Apple.com purchases as unauthorized personal spending (Dkt. 58 at 7). These charges, totaling approximately $9,408.98, are already itemized in the defense's forensic schedule of plainly union related expenses as computer related equipment and technology accessories. See Defense Ex. B (Dkt. 57), Schedule JSH A1. The defense's own sentencing memorandum, filed before the Government raised this issue, already disclosed that this category includes Apple computer equipment issued for use in the

union office. Dkt. 57 at 7. The Government does not identify any evidence that this equipment was diverted to personal use rather than delivered to and used in the Local 2620 office and does not explain why an expenditure the defense disclosed on the face of its own filed memorandum months earlier should now be treated as suspect.

**The Government's Reliance on the Interchangeable Use of the AFSCME Credit Cards Does Not Support Its Selective Attribution of Charges:**

In footnote two of its supplemental brief, the Government argues that the total loss is attributable to Ms. Herrera and co-defendant Carlis jointly under U.S.S.G. § 1B1.3(a)(1), relying on Ms. Herrera's statement to investigators that she and Carlis used the AFSCME credit cards interchangeably, and on a Louis Vuitton receipt showing a purchase of approximately $5,579 charged to Ms. Herrera's card but listing Carlis as the client. See Dkt. 58 at 3 n.2; Ex. 4.

> The Government cannot have it both ways. If, as the Government contends, the two cards were functionally interchangeable such that a purchase under Carlis's name can properly be attributed to Ms. Herrera because it appeared on her card, then the same logic requires that charges under Ms. Herrera's name appearing on Carlis's card, such as the Southwest Airlines ticket for Andrew Carlis, be evaluated under the same jointly undertaken activity standard, not excluded on the theory that it was Carlis's charge alone. The defense agrees that Ms. Herrera and Carlis are jointly and severally responsible, as a legal matter, for whatever total pecuniary loss the Court finds was actually caused by their jointly undertaken scheme. See U.S.S.G. § 1B1.3(a)(1). The defense's position is, and remains, that the total actual loss caused by that scheme is $205,654.06, calculated from the combined pool of charges on both cards after excluding the plainly union related expenditures set forth above, regardless of which cardholder's name happens to appear on a given receipt. The interchangeable use of the two cards confirms that the proper unit of analysis is the combined, categorized total of both cards, not a card by card or name by

name tally, which is the same approach the defense's forensic accounting already applies.

The defense's primary guideline argument does not depend on the Court adopting the ambiguous $56,083.49 category, nor on any single item addressed above. The defense's primary objection is that excluding the plainly union related operational expenses set forth in Schedule JSH A1, as refined above, reduces the loss to no more than $205,654.06. Because $205,654.06 is well below the $250,000 cutoff under the current U.S.S.G. § 2B1.1(b)(1)(G), and because, as shown in Section II.D below, it is also well below the $350,000 cutoff under the Guidelines Manual actually in effect on the date of sentencing, the twelve-level enhancement cannot apply, regardless of how the Court rules on individual retail items.

**C. The AFSCME Internal Proceedings and Restitution Demand Are Legally and Factually Unreliable Measures of Guideline Loss**

The Government repeatedly points to the findings of the AFSCME Judicial Panel (Dkt. 58-3) and Local 2620's restitution demand (Dkt. 49-2), which claimed an exorbitant loss of $496,671.47 (Dkt. 58 at 9 to 10). Far from supporting the Government's position, this reliance illustrates the foundational weakness of the Government's loss figure:

[AFSCME Internal Demand] $496,671.47 (Adopted by internal default panel)

(45 percent rejected as unsupportable by federal investigators)

[DOL-OIG Investigation Total] $272,481.91 (Unvetted gross card total)

(Excluding $66,827.85 in verifiable operational expenses)

[Actual Pecuniary Loss] $205,654.06 (Below $250,000 Guideline Threshold, and Below the $350,000 Threshold Under the Guidelines Manual in Effect at Sentencing)

**The Internal Union Demand Was Rejected by Federal Investigators:**

Local 2620 initially claimed $496,671.47. When the Department of Labor (DOL-OIG) audited the records, federal investigators slashed that number by nearly forty five

percent, determining that the actual charges attributable to the criminal investigation totaled $272,481.91. If the union's internal audit and Judicial Panel findings were so precise, the Government would not have discarded over $224,000 of their claims.

**The AFSCME Judicial Panel Proceeding Reflects Ms. Herrera's Exercise of Her Fifth Amendment Right, Not a Concession of Guilt or Loss Amount:**

The AFSCME Judicial Panel decision (Dkt. 58-3) was a union administrative proceeding conducted by Zoom on April twenty sixth, 2023. Ms. Herrera's decision not to appear, testify, or present evidence at that proceeding was not an admission of the union's claimed loss figure. It was the exercise of her constitutional right against self-incrimination, which she was entitled to invoke in that parallel proceeding without having her silence held against her in this criminal case. The Supreme Court has squarely held that a sentencing court may not draw an adverse inference from a defendant's silence in determining facts relevant to the circumstances and details of the offense, because the Fifth Amendment privilege applies with the same force at sentencing as it does at trial. *Mitchell v. United States*, 526 U.S. 314, 327 to 330 (1999). That same principle forecloses treating Ms. Herrera's silence before the union panel, a proceeding whose findings the Government now asks this Court to adopt, as either a concession of the panel's $496,671.47 figure or as evidence that the figure bears the “sufficient indicia of reliability to support its probable accuracy” that Guidelines findings require. U.S.S.G. § 6A1.3(a); see also *United States v. McGowan*, 668 F.3d 601, 606 to 607 (9th Cir. 2012) (information used at sentencing is unreliable if it lacks some minimal indicium of reliability beyond mere allegation); *United States v. Vanderwerfhorst*, 576 F.3d 929, 935 (9th Cir. 2009) (a defendant challenging information relied upon at sentencing must show that it is false or unreliable, and that the court demonstrably relied on it). The panel's findings were entered without any witness examination, cross examination, or adversarial testing, by a body with an obvious institutional interest in maximizing the union's claimed loss and restitution recovery, against a respondent who had every constitutional right not to participate. A one-sided administrative record built on that silence is not a reasoned adjudication the Court may rely upon to find criminal loss.

**The Government's "Conservative" Loss Amount Remains an Unvetted Gross Total:**

The Government asserts that it adopted a "conservative approach" by settling on $272,481.91 (Dkt. 58 at 6). However, as shown in the defense memorandum, that figure is simply the combined total of every single charge on card ending 8979 ($225,189.67) and card ending 8607 ($47,292.24) that investigators flagged during their review period. It made zero deduction for verifiable, necessary operational costs.

**D. Under the Guidelines Manual in Effect at Sentencing, No Calculation of Loss in This Record Supports a Twelve Level Enhancement**

Effective November 1, 2026, before this matter's November 13, 2026 sentencing date, the United States Sentencing Commission amended the loss table under U.S.S.G. § 2B1.1(b)(1) to account for cumulative inflation. See 91 Fed. Reg. 24088 (2026). Under the amended table, the ten-level enhancement threshold rises from $150,000 to $200,000, and the twelve-level enhancement threshold rises from $250,000 to $350,000.

This is not a discretionary request for a future benefit. Under 18 U.S.C. § 3553(a)(4)(A)(ii) and U.S.S.G. § 1B1.11(a), a sentencing court applies the Guidelines Manual in effect on the date of sentencing, not the Manual in effect when the parties filed their original sentencing positions. See U.S.S.G. § 1B1.11(b)(1) (the court applies the Manual in effect at sentencing "unless the court determines that doing so would violate the ex post facto clause of the United States Constitution," a concern applicable only where a later Manual increases a defendant's punishment, which the November 1, 2026 amendment does not do here). Because Ms. Herrera's sentencing hearing is set for November 13, 2026, the amended table is the governing law of this case, not a variance from it.

Applied to the undisputed record, the amendment resolves the twelve-level question regardless of how the Court rules on any of the factual disputes addressed in Section II.B above:

**The Government's own unadjusted figure no longer supports a twelve-level enhancement.**

Even crediting the Government's entire $272,481.91 figure, with no deduction whatsoever for the plainly union related expenditures addressed above, that figure yields only a ten-level enhancement under the amended table, not twelve, because it falls below the amended table's $350,000 threshold and above its $200,000 threshold. The Government's own Supplemental Sentencing Position for co-defendant Carlis, filed in this case on November 6, 2026, confirms the point: applying the identical $272,481.91 loss figure, the Government there calculated only a ten-level enhancement under the amended table, yielding a total offense level of 14. See Dkt. 62 at 9 to 10. The Government should not be heard to urge a twelve-level enhancement against Ms. Herrera on the same loss figure it has already told this Court, in the companion case, supports only ten.

**The defense's primary figure, $205,654.06, likewise yields a ten-level enhancement.**

That figure exceeds the amended table's $200,000 threshold, so it produces the same ten-level outcome as the Government's own unadjusted figure. The parties' dispute over the individual items addressed in Section II.B is accordingly immaterial to whether a twelve-level enhancement applies: on the current record, nothing supports more than ten levels.

**The defense's fully credited calculation now yields a six-level enhancement, not eight.**

If the Court credits both the plainly union related category and the ambiguous “possibly union related” category, Schedule JSH A2, totaling $56,083.49, the resulting figure is $149,570.57. Under the amended table's $150,000 threshold for an eight-level enhancement, that figure falls just below the cutoff, yielding a six-level enhancement instead of eight. The defense notes that this figure is close enough to the amended threshold, within approximately $429, that the Court may wish to have the defense's forensic accountant available to confirm the underlying schedule at the hearing.

In short, under the Guidelines Manual that actually governs this sentencing, every version of the loss calculation in this record, from the Government's own unadjusted total to the defense's most conservative figure, falls below $350,000. The twelve-level enhancement the Government continues to urge in its Supplemental Position is accordingly unavailable as a matter of law, independent of the factual disputes addressed above.

To the extent the Court were to conclude that the amended table does not apply for any reason, the same considerations that led the Sentencing Commission to raise these thresholds, namely that the prior thresholds no longer reflect current economic conditions, independently support a downward variance under 18 U.S.C. § 3553(a). See *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *Gall v. United States*, 552 U.S. 38, 49 to 51 (2007) (a district court has discretion to vary from the advisory range where, as here, a guideline's dated thresholds overstate the seriousness of the offense). The fact that Ms. Herrera's sentencing occurs after the Commission's own inflation adjustment took effect only reinforces that a sentence calculated under the prior, outdated thresholds would overstate the seriousness of her conduct.

**E. A Probationary Sentence With Twelve Months of Home Detention Fully Satisfies the Statutory Purposes of 18 U.S.C. § 3553(a)**

The Government's Supplemental Position focuses entirely on maximizing the guideline calculation while ignoring the individualized sentencing factors mandated by 18 U.S.C. § 3553(a):

**Mitigation of Financial Harm:**

As documented in the PSR, Local 2620 has already received a $400,000 bonding recovery from Fidelity Insurance Company of Maryland (PSR ¶ 40; Dkt. 49-2). While Ms. Herrera acknowledges that this insurance reimbursement does not extinguish mandatory restitution to the subrogee insurer under 18 U.S.C. § 3664(j)(1), it is a critical factor under § 3553(a)(1) and (a)(2)(A): the union has suffered no ongoing operational collapse and has been fully reimbursed.

**First-Time Offender and Zero Criminal History:**

Ms. Herrera has led an otherwise law-abiding life, has zero criminal history points, and qualifies for the two-level reduction under U.S.S.G. § 4C1.1. She has complied fully with all conditions of pretrial release for over two years without incident.

**Public Safety and Specialized Treatment Provider:**

Ms. Herrera holds a Master of Social Work and is a licensed clinical social worker certified to provide specialized sex offender treatment. She currently provides treatment services under contract for parolees supervised by the California Department of Corrections and Rehabilitation (PSR ¶¶ 113 to 118). Incarcerating Ms. Herrera provides no public safety benefit; on the contrary, it deprives the community of a specialized clinician who actively works to reduce recidivism among high-risk offenders.

**Family Hardship:**

Ms. Herrera is the sole financial provider and caregiver for her husband, who suffers from Type 1 diabetes and remains incapacitated from serious injuries sustained in an April 2026 automobile accident, awaiting pending surgery (PSR ¶¶ 98 to 101). Incarceration would impose severe, catastrophic hardship on an innocent, disabled family member.

**Ongoing Therapeutic Engagement and Rehabilitation:**

Ms. Herrera has been engaged in consistent, voluntary treatment with a licensed marriage and family therapist for more than a year. Her therapist reports that Ms. Herrera has approached treatment seriously, has reflected candidly on her conduct in this case, and has demonstrated increased self-awareness and improved coping skills in response to the stress of this prosecution. See Defense Ex. G, Letter of Mary K. Bryan, LMFT (filed concurrently). Continued access to treatment, family support, and employment, all of which a custodial sentence would disrupt, supports the stability and rehabilitation Ms. Herrera's therapist has observed.

**Family Support and Character:**

Ms. Herrera's daughter, Jazzmin Ballou, describes her mother as the family's primary caregiver and provider, including for her stepfather, who suffers from diabetes and other health issues, and attests to Ms. Herrera's honesty, selflessness, and sustained commitment to bettering herself and her family, including while raising two children alone and completing two graduate degrees. See Defense Ex. H, Character Letter of Jazzmin Ballou (filed concurrently). This firsthand account corroborates the § 3553(a)(1) history and characteristics already before the Court and underscores the hardship a custodial sentence would impose on Ms. Herrera's family.

A sentence of twelve months of home detention as a condition of probation, combined with mandatory restitution and community service, satisfies every statutory purpose set forth in § 3553(a). It restricts Ms. Herrera's liberty, provides strict punishment, ensures deterrence, preserves her specialized employment, and permits her to meet her financial obligations.

## III. CONCLUSION

The Government's Supplemental Sentencing Position fails to meet its burden of proving that the actual pecuniary loss resulting from the offense exceeds $250,000, and, in any event, fails to identify any calculation of loss in this record that would support a twelve-level enhancement under the Guidelines Manual actually in effect on the date of sentencing. Administrative violations of union bylaws cannot be substituted for proof of actual fraud loss under U.S.S.G. § 2B1.1.

Ms. Herrera respectfully requests that this Court:

Find that, under the Guidelines Manual in effect on the date of sentencing, no calculation of the actual loss attributable to the offense, including the Government's own unadjusted figure, supports more than a ten-level enhancement under amended U.S.S.G. § 2B1.1(b)(1)(F), and that the defense's fully credited calculation supports only a six-level enhancement under amended U.S.S.G. § 2B1.1(b)(1)(D);

Decline to apply the contested two-level abuse-of-trust enhancement under U.S.S.G. § 3B1.3; and

Exercise its discretion under 18 U.S.C. § 3553(a) and *United States v. Booker*, 543 U.S. 220 (2005) to impose a sentence of probation for a term of three years, conditioned upon twelve months of home detention, appropriate restitution, and community service.

Dated: November 6, 2026.

Respectfully submitted,

*/s/ Robert M. Helfend*
ROBERT M. HELFEND
Attorney for Defendant
SOFIA VANESSA HERRERA

## CERTIFICATE OF SERVICE

I hereby certify that on November 7, 2026, I electronically filed the foregoing SOFIA HERRERA'S RESPONSE TO GOVERNMENT'S SUPPLEMENTAL SENTENCING POSITION with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Thi Hoang Ho, AUSA
Assistant United States Attorney
Asset Forfeiture & Recovery Section
1100 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Email: Thi.Ho@usdoj.gov

*/s/ Robert M. Helfend*
ROBERT M. HELFEND